**IN RE LPN HEALTHCARE FACILITY INC.,**
Debtor.

**Case No. 09–64850**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed June 5, 2015

David M. Whittaker, Laura M. Zaremski, for Columbus, OH.

### MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION APPROVING COMPROMISE (DOC. NO. 650)

CHARLES M. CALDWELL, Judge

This Memorandum Opinion and Order serves as the Court's findings of fact and conclusions of law for the Motion Approving Compromise filed by the Chapter 7 Trustee, William B. Logan, Jr. ("Trustee"), and the lone Objection by a creditor, Autumn Health Care, LLC ("AHC"). The Trustee seeks resolution of an adversary proceeding (No. 12–2471) commenced against Michael B. Johnson, Sr., Michelle Ghiloni as Executor for the Estate of Sarah Johnson, and the Johnson Life Insurance Trust ("Defendants"). Based upon testimony and other evidence, the Court approves the proposed compromise. A brief history illustrates the bases for the Court's ruling.

On December 21, 2009, LPN Healthcare Facility Inc. ("LPN") filed under Chapter 11 of the United States Bankruptcy Code ("Code"). At the time, LPN operated a licensed, 81–bed skilled care nursing home facility in Newark, Ohio. Sara Johnson, the recently deceased mother of Michael B. Johnson, Sr. and Michelle Ghiloni, founded and operated LPN that was in business for approximately forty years. A decline in patient census and reduction in governmental reimbursements prompted the bankruptcy filing. Despite the best efforts of the parties and retained professionals, twelve months later, on December 21, 2010, LPN auctioned all its assets, and AHC successfully bid $3,650,000.00 for their acquisition. The Court approved the sale to AHC on December 28, 2010. Additionally, the sale order provided means for post-sale collections, accounting, and the division of other rights and responsibilities between LPN and AHC, including the filing of reports with regulatory authorities. Essentially, the case appeared over and done, and receded from the public docket.

However, approximately a year later, on January 4, 2012, the U.S. Trustee ("UST") filed a Motion to Convert to Chapter 7 or Dismiss because LPN had not filed a monthly financial report since December 2010. On January 26, 2012, the Court entered an Agreed Order between LPN and the UST stating that it would file all of the missing financial reports and remain current along with filing a liquidating plan, or else the U.S. Trustee could submit a conversion order to the Court, without further notice or hearing. Despite these efforts to regain control over the progress of the case, on February 15, 2012, the UST filed an emergency motion for the appointment of a Chapter 11 trustee, alleging that Michael B. Johnson, Sr., used funds from the sale to AHC for unauthorized personal purposes. The next day, the Court entered an Agreed Order requiring the appointment of a Chapter 11 trustee. On February 21, 2012, after a status hearing, the Court ordered the case converted to Chapter 7, prompting the appointment of

the Trustee to investigate LPN's financial affairs, and take necessary actions to collect and liquidate remaining assets.

The pace quickly advanced and nine months later, on November 8, 2012, the Trustee filed an Adversary Proceeding that included thirteen claims against twelve Defendants (No. 122471). Those Defendants are Michael B. Johnson, Sr., Sara Johnson, Michelle Ghiloni (Guardian of Sara Johnson), Goosepond Retirement Village, Inc., George W. Fels, Si Digman, Si Digman, LLC, John Ghiloni, Michelle Ghiloni (Individually), Northtowne Senior Living Community, LLC., Business Men's Assurance Company of America, and the Johnson Life Insurance Trust. On January 11, 2013, Defendants Michelle Ghiloni (Guardian of Sara Johnson), Sara Johnson, the Johnson Life Insurance Trust, and Northtowne Senior Living Community, LLC filed two cross-claims against Defendant, Michael B. Johnson, Sr. In response, on February 12, 2013, he filed two cross-claims. This initial flurry of litigation was capped by the Trustee's filing of an Amended Complaint on March 25, 2013, adding a fourteenth claim, alleging conversion by Michael B. Johnson, Sr., Sara Johnson, Goosepond, and Northtowne.

Layers of complexity and conflict levels reached a zenith approximately one year later, when the Trustee filed a separate adversary proceeding against LPN's former Chapter 11 counsel for alleged professional negligence and breach of fiduciary duty (No. 13–2047). Note that the Trustee also previously asserted claims for alleged professional negligence, breach of fiduciary duties and unjust enrichment, against LPN's former Chapter 11 accountant in Adversary Proceeding Number, 12–2471. Based upon the Trustee and his Counsel's prescient request, on July 23, 2013, the Court consolidated the two adversaries, and referred the consolidated cases for mediation to the Hon. John E. Hoffman, Jr., U.S. Bankruptcy Judge. During the past nearly two years, the parties have engaged in extensive negotiations, including two all-day and into the night mediation sessions, conducted by Judge Hoffman. His skills along with those of the professionals involved, and the willingness of parties to cooperate despite hard-fought differences, bring us to the present opportunity to make a significant dent in the amounts owed, halt the accrual of legal fees and expenses, and close an unfortunate chapter in the lives of all concerned.

Specifically, without any admission of wrongdoing the Trustee settled with former Chapter 11 counsel resulting in the withdrawal of a final fee application for $33,858.16 and remission of $65,000.00 in compensation previously received. Likewise, without any admission of wrongdoing, the Trustee settled with the former Chapter 11 accountant, resulting in a $250,000.00 payment to the Chapter 7 estate. The Court approved settlements on March 11 and 12, 2014, with no objections from any creditors, including AHC. The parties continued to work, under the guidance of Judge Hoffman, to resolve the rest.

The virtues of patience and persistence were equal to the tasks. So, a year later on March 11, 2015, the Trustee filed the present Motion to Compromise with the remaining Defendants. Three of the original fourteen claims remain, totaling approximately $2.6 million dollars, and the compromise promises to resolve them all. It is best described as a global resolution of numerous and conflicting interests. The numbers received into evidence best tell the story.

As of April 3, 2015, the estate has $1,236,995.43 in cash on hand. The Trustee will receive an additional $1,000,000.00 from the remaining Defendants as part of the proposed compromise that includes:

- $164,511.41 currently in escrow from real estate sold by Michael B. Johnson, Sr.,
- An estimated $200,000.00 in proceeds from two parcels of real estate to be sold by the Executor of the Sara Johnson estate, and
- Approximately $635,488.59 from the Johnson Life Insurance Trust.

In addition to these cash payments, Michael B. Johnson, Sr. will withdraw with prejudice his disputed claim of $320.854.85. From the $1,000,000.00, the Trustee proposes to earmark $769.722.59 to pay an Internal Revenue Service ("IRS") claim reduced by agreement from the filed amount ($996,234.05). Specifically, the IRS agreed to waive $226,511.46. According to evidence provided by the Trustee, after estimated settlement-related expenses are deducted ($188,000.00) along with the amount paid to the IRS (769.722.59), a net of $1,279,272.84 will remain. The Trustee can then use this balance to resolve the disputed secured claim ($395,222.86) of the Ohio Bureau of Workmen's Compensation ("Bureau"). Assuming payment in full to the Bureau, a balance of $884,049.98 will remain to liquidate total Chapter 11 administrative priority claims ($622,819.10), including the one asserted by AHC. The Trustee estimates that if he prevails in his argument that AHC is only owed $257,995.66, based upon amounts already received from the LPN sale proceeds ($65,631.41), there will be a net available of $261,230.88 for all other remaining creditors.

These results are in stark contrast to what happens if the Court fails to approve the settlement. The Trustee estimates that there will be approximately $200,000.00 in litigation expenses for the remaining adversary proceeding, and after payment of the alleged secured claim of the Bureau, only $453,772.57 will be available to pay all Chapter 11 administrative

priority claims totaling $622,819.10, including AHC. As a result, the Trustee estimates a Chapter 11 administrative priority shortfall of ($169,046.53). In addition, there would be no resolution of the IRS claim, which will result in additional litigation expense for the estate to sort out who should bear responsibility for payment of this huge claim ($996,234.05). The parties have cobbled a mutually beneficial settlement that includes payment of a substantially reduced amount to the IRS. The estate avoids a battle with the IRS, and the Defendants minimize potential personal liability. This connection, or give and take, incentivizes Defendants' voluntary use of probate estate assets, especially the life insurance trust, to fund the settlement, in lieu of the Trustee traveling to state court in hot pursuit.

At this the last minute, AHC has not challenged the efficacy of the settlement, but rather it is concerned with the funds earmarked for the IRS. It argues that this payment is not in compliance with the priority of payments established by the Code, that AHC is owed additional sums from the sale transaction, and that it should be given additional time to file an adversary proceeding to determine the true amount of its claim against the Chapter 7 estate.

However, the sale of all the assets to AHC closed more than four years ago. After the conversion of this bankruptcy to Chapter 7, the appointment of the Trustee, the commencement of two adversaries, one of which has already been settled, the Court finds and concludes that AHC had more than ample opportunity to litigate the exact amount of its sale-related claims. In addition, AHC has failed to provide evidence, after more than four years, of any additional amounts due from the sale, and did not present any testimony or other evidence at the settlement hearing. AHC

has failed to demonstrate and/or quantify how it or other similarly situated creditors, suffer harm by the substantially discounted payment to the IRS. Instead, only additional delay and expense can come by yielding to their belated requests. Having addressed the objections of AHC, the Court now turns to the requisite independent judicial review of the proposed settlement.

 Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides, "(o)n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The Trustee's burden of proof is to show that the settlement is in the best interest of the estate. *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr.N.D.Ohio 1988). The Court must conduct its own review of the facts and posture of the case, and independently determine that the proposed compromise is fair and equitable. *In re Peoples*, 485 B.R. 478, *2 (6th Cir. BAP 2013). The four factors considered include:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it;

(d) The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at *3. A party objecting to a proposed compromise must support the objection by a preponderance of the evidence to be sustained. *Treinish v. Topco Assoc., Inc. (In re AWF Liquidation Corp.)*, 208 B.R. 399, 400 (Bankr.N.D.Ohio 1997). For reasons that follow the Court finds and concludes that the settlement as proposed, including all payment terms, is fair and equitable, and indeed serves the best interest of the estate and all its creditors.

From the Court's perspective, the chief concern is that nearly six years have passed since the bankruptcy filing, and almost three years since the filing of the consolidated Adversary Proceedings. Witnesses move, become more difficult to contact, and their memories fade. With the passage of time, it becomes more difficult to determine whether inconsistencies are products of deceit and deception, or a matter of innocent failure to recollect accurately statements and actions taken several years ago. Witnesses, who were formerly parties and have since settled, may have different motivations. Evidence can be lost, or its context blurred. One of the key witnesses and founder of the business, Sara Johnson, died on January 11, 2014.

Should the Court fail to approve the settlement, the Trustee will incur significant trial expenses. Specifically, the Trustee employed a forensic accountant to identify alleged improper transactions. The Trustee must then incur the additional expense of translating this work into admissible expert testimony. No doubt, the Defendants will in response employ one or more of their own forensic accountants, which the Trustee must then depose. The Court would issue a trial scheduling order, setting deadlines for discovery, dispositive motions, etc., and issues such as jury demands and withdrawal of the reference loom on the horizon. Given the number of parties and witnesses involved, finding a suitable trial date may be no easy task. It could easily take another year before this case would go to trial, if not longer. That would mean a trial date approaching four years after the filing of the consolidated Adversary Proceedings, with potential appeals to follow, along with post-judgment collection proceedings. At the end of this trail, it remains an open question whether there will be anything to collect for the trouble. Seasoned professionals represented all parties to the compromise. The

parties are all amply familiar with the risks and benefits of this deal. AHC has offered no bases for this Court to ignore their collective judgments, after it too has independently come to the same conclusions.

■ In sum, this case is a textbook example of the art and wisdom of compromise. A perfect deal is not required, but rather one that yields some benefit for all, while at the same time extracting relatively equal measures of pain. This is the art. The battle ends, while all may still walk from the field. That's the wisdom.

The Court **GRANTS** the Trustee's Motion Approving Compromise, in full, as filed.

The Court **ORDERS** the Trustee to submit a separate order that includes all the requisite terms and conditions of the compromise, as just approved by the Court, within ten (10) days from entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**